### L. J. McFarlin v. The State.

No. 23600. Delivered March 5, 1947.

C. C. *McDonald,* of Wichita Falls, for appellant.

*Ernest S. Goens,* State's Attorney, of Austin, for the State.

BEAUCHAMP, Judge.

The appeal is from a sentence of three years in the penitentiary on a charge of theft of an automobile.

The State relies on the testimony of Jim Tanner, who appeared as an accomplice witness in behalf of the State. He admitted his part in the theft of the car and the sole question involved in the appeal is whether or not there is sufficient corroborating testimony to sustain the conviction. This calls for a discussion of the evidence by the several witnesses.

On Saturday night, the 16th of March, 1946, D. A. Chapman, Jr., driving his father's car, returned to the home after an evening spent in Seymour, arriving at one-thirty Sunday morning. He left the car in front of the house and in it the key, together with a sack of groceries and a log chain. The car was in good running condition and had plenty of gasoline. When the family awoke Sunday morning they found the car had been removed some three or four hundred yards west of the house, where it was sitting on the ground, the wheels with the tires having been removed. The chain was missing also. Chapman's house is situated seven or seven and a half miles northwest of Seymour. During the Saturday night the watchman saw appellant and Tanner together twice, once at about ten o'clock, and again after twelve, probably one-thirty. When he last saw them they were in a car driving south. This is the only occasion on which appellant and Tanner were seen together in or about Seymour.

As shown by a check involved in the case, appellant and Tanner appeared at the home of one Timmons, who lived beyond Stephenville in Erath County, at which time Tanner offered five tires and five wheels for sale. Timmons bought four of the tires, two of which the evidence shows to be six ply and practically new. The purchase price was $10.00 each. He gave Tanner $25.00 in money and made a check which, at Tanner's suggestion, was made payable to appellant. Timmons then sent appellant to a nearby grocery store to have it cashed and bring the money back. When he did, the money was either delivered to Timmons or to Tanner. In either event the money was turned over to Tanner and none of it paid to appellant. Contrary to the date of the check, Timmons said that he thought that was Sunday, which, according to the evidence, would have been the 17th of the month.

Sometime during the week following the sale of the tires to Timmons, Tanner and Timmons sold the five wheels to D. O. Williams in Comanche, Texas, for the sum of $12.50. Appellant was not present. They were traveling in Timmons' car. Appellant and Tanner appear to have been in and about the home of Timmons during the week and were there when the Sheriff of Baylor County came, with Chapman, to claim the tires. These were found on Timmons' car. The log chain which had been in Chapman's car was found tied to appellant's car. It is noted that appellant, Tanner and Timmons, had been dealing with each other during this week. Timmons did not see the chain in or about the car with the tires and wheels at the time he purchased the tires. Timmons had never known appellant until he appeared at his place with Tanner, but he had been acquainted with Tanner for twenty years.

There is no attack made on the charge which the court gave the jury. He correctly instructed them that a conviction could not be had upon the testimony of an accomplice unless the jury believes his evidence is true, that it connects the party on trial with the offense, and that they could not then convict on such accomplice testimony unless it is corroborated by other evidence tending to connect the defendant with the commission of the offense. In view of Tanner's testimony, the jury must have been troubled in reaching a conclusion as to what part of his testimony, if any, was true. We review his evidence upon that question. When placed on the witness stand Tanner said that he and appellant went to the Fat Stock Show in Ft. Worth on March 16th. The witness had a car and they rode in it. "We came back in the sheriff's car." When they returned to Seymour they went out to where appellant was living. He then denied that he knew where Chapman lived, that he had ever been to his house or passed by it, and said he did not remember going with appellant out in the country northwest of Seymour, "We might have been out north. We went to the lake." He did not remember what he did do when he got back from Fort Worth, or that he went out in front of a man's house northwest of Seymour and pushed an automobile from in front of it. He remembered being arrested, but did not remember what he told the officer. He sold some tires to Roy Timmons at Stephenville, and added: "I could have got them anywhere. I don't know where I got the tires." He got the tires off of somebody's car and he did not know where it was. He had been indicted in this case and was also under sentence from Breckenridge. He had been in the penitentiary four times, and knew he was going back again. He then said that he and appellant took some tires off of a car which they

pushed from in front of a man's house, and sold them to Roy Timmons. Appellant was with him and helped take the tires and wheels off of the car. He then said that they were traveling in appellant's car. He said they did not go directly to Timmons' house, but they got there the next day. Referring to the manner of Timmons' paying for the tires he said, "As to how he paid me, there was two or three times, I don't remember." Evidently he meant he had stolen tires two or three times and sold them to Timmons. Again he said, "I think we took a chain out of that car out there that night. Yes, it was a pretty heavy chain." Then he further testifies that when he took the wheels to Comanche to be sold they were in appellant's car, but he did not know whether appellant knew it or not.

The cross-examination of Tanner brings out evidence quite as unsatisfactory to the State as that which we have just reviewed on the direct examination. He impliedly admitted that he never saw appellant until he met him at a cafe in Stephenville. He acceded to the statement that he told appellant there that he had burned the rods out of his car and that if he, appellant, would wait until the witness sold the tires the witness would go with appellant to Waco. He said he did not recall whether he already had the tires and wheels when he ran into appellant on the west side of the square, in the cafe (in Stephenville). He again said, "I don't know whether he was with me when I took the tires." In a review he was asked this question: "He was not with you and he never saw these tires until he got to Stephenville?" To this he answered, "I don't want to answer that question."

Taken on re-direct examination he told the State's attorney that a part of what he had testified on the witness stand was true. He said, further, "I guess Red was with me all of the time until we were at Dublin and we were together until after I disposed of the tires and wheels." On further cross-examination he said, "It kind of looks like I have to testify to save myself. * * * part of what I have testified is true and part isn't." He stated on further direct examination that the part which implicates appellant is true.

The next question for consideration is whether or not there is any evidence corroborating Tanner's story of appellant's connection with the offense. The evidence of the night watchman at Seymour, that they were seen together some seven miles away, is not sufficient. Crawford v. State, 197 S. W. (2d) 575, and authorities there discussed.

The State relies further on the fact that, something like a week after the commission of the offense, the sheriff found the chain which was taken from Chapman's car fastened to the car of appellant. In this connection it is noted that when the tires were sold appellant asserted no ownership, and received none of the proceeds of the sale. He did not go with Tanner to sell the wheels and there is no evidence that he received any part of that money. The three, Tanner, appellant, and Timmons, had been together during the week preceding the arrest and the finding of the chain fastened to appellant's car. There is no explanation to in any way indicate how or why the chain was fastened to this car—no further evidence by the State and no explanation by appellant. Appellant may have known that the chain had been stolen, and yet not have been in any way connected with the original taking. Further evidence to connect appellant with the commission of the original taking of the automobile, for which he is convicted, does not appear in the record.

We are of the opinion that the evidence of the chain attached to appellant's car a week or more later, under all of the circumstances of the case, is insufficient corroboration and that the instructed verdict should have been given.

The judgment of the trial court is reversed.